UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-cr-28 (APM) |
| | : |
| KENNETH HARRELSON | : |
| | : |
| Defendant. | : |
| | : |

DEFENDANT KENNETH HARRELSON'S
MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE

COMES NOW, the Defendant, Kenneth Harrelson, by and through counsel, Nina Ginsberg and Jeffrey Zimmerman, and respectfully moves this Court for reconsideration of conditions of release.

### I.   PROCEDURAL BACKGROUND

On March 10, 2021, Kenneth Harrelson was arrested in Florida and taken into custody based on a criminal complaint in the instant case. *See* Rule 5(c)(3) Documents (ECF 122) (3/15/21) at 1. On March 15, 2021, Mr. Harrelson appeared before Magistrate Judge Embry J. Kidd in the United States District Court for the Middle District of Florida (Orlando Division) for a detention hearing. *Id.* at 7. At that time, he did not have the benefit of any discovery in this matter and had been able to spend very little time with his attorney. Following the hearing, he was ordered detained. *Id.*

On March 26, 2021, the United States Court of Appeals for the District of Columbia handed down *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, (DC Cir. Mar. 26, 2021). This opinion, which involved two defendants who had similarly been charged and detained with regard to the events at the United States Capitol on January 6, 2021, clarified the

1

standards to be used in determining potential conditions of release. Judge Kidd and prior counsel did not have the benefit of the Court's guidance in *Munchel*, nor did they have the information and discovery that has since been made available to current counsel. As is discussed in detail below, under the *Munchel* standards and based on the discovery and information recently provided to the defense, Mr. Harrelson should be released on conditions.

## II. LEGAL STANDARDS

This Court reviews the findings of the magistrate court using a *de novo* standard of review. "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'" *U.S. v. Johnston*, 2017 U.S. Dist. LEXIS 159461, *8 (D.C. Cir. 2017) (citing *U.S. v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013).

Determination of whether a defendant should be detained must always begin with a presumption in favor of release. "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *U.S. v. Ali Muhamed Ali*, 793 F. Supp. 2d 386, 387 (D.D.C. 2011). The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, "sets forth the limited circumstances in which a defendant may be detained before trial despite the presumption in favor of liberty." *U.S. v. Yaming Nina Qi Hanson*, 613 F. Supp. 2d 85, 86 (D.D.C. 2009). This Court is required to determine whether Mr. Harrelson poses a flight risk or a danger to any other person and the community. *See* 18 U.S.C. § 3142. Whether the defendant poses a danger to the community is determined by a standard of clear and convincing evidence. *See Ali Muhamed Ali*, 793 F. Supp. 2d at 387. Only if there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *U.S. v. Ploof*, 851 F.2d 7 (1st Cir. 1988).

In addition, we respectfully submit that the presumption of detention set forth in 18 U.S.C. § 3142(e) does not apply to this case. Section 3142(e) of 18 United States Code sets forth a rebuttable presumption of detention pending trial: "(3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed— *** (C) an offense listed in section 2332b(g)(5)(B) of Title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." *See* 18 U.S.C. § 3142(e)(3).

At Mr. Harrelson's detention hearing before the magistrate judge in Florida, the government argued the presumption applied because Mr. Harrelson was charged with an offense calculated to influence the conduct of government, namely the destruction of government property, an offense enumerated in section 18 U.S.C. § 2332b(g)(5)(A) & (B). At the detention hearing the government proffered without support, that from early November 2020 through January 6th of 2021, Mr. Harrelson, along with his codefendants, planned to use violence to breach the Capitol and obstruct congressional proceedings.  The government further proffered that Mr. Harrelson participated in meetings of the Oath Keepers on GoToMeeting and that on January 3rd of 2021, he, along with Kelly Meggs, hosted a meeting titled "D.C. Planning Call." The government made no representations regarding the what was discussed during the on-line meetings, but nevertheless argued from messages obtained from social media accounts, <u>not belonging to Mr. Harrelson</u>, that the conspirators (including Mr. Harrelson) planned to storm the Capitol and coordinated with a group of co-conspirators who agreed to serve as a quick reaction force to monitor the attack at the Capitol and travel to the Capitol in the event they were called upon.  The government offered no factual support for these allegations and no evidence that Mr.

3

Harrelson was even aware of the social media postings, and more specifically, that he destroyed property or engaged in acts of violence.

Neither prior defense counsel nor Judge Kidd possessed any evidence regarding the information proffered by the government. There was a dispute as to whether the presumption applied and Judge Kidd ruled that it did. Judge Kidd found that Mr. Harrelson did not pose a risk of flight, but that there were no conditions or combination of conditions that would reasonably assure the safety of the community if Mr. Harrelson were released.

Based on information now available through discovery, the government's claim that this is a rebuttable presumption case still lacks factual support. The government has produced <u>no</u> evidence that Mr. Harrelson damaged any property or that he committed any act of violence. The government has also produced <u>no</u> evidence Mr. Harrelson caused in excess of $1,000 worth of damage. Therefore, even if the United States had probable cause to believe Mr. Harrelson personally damaged property (which he disputes), it lacks probable cause to believe he caused the level of damage required to bring the crime within the felony provision of the statute. Furthermore, the government has produced no evidence that Mr. Harrelson's alleged conduct was calculated to influence the conduct of government, as is also required for the presumption in favor of detention to apply to him. *See* 18 U.S.C. § 2332b(g)(5)(A) & (B). Finally, even if the Court finds that the presumption applies to his case, Mr. Harrelson can now rebut that presumption based on the discovery and information that current counsel has obtained and had time to review.

To determine whether there are conditions of release which will ensure Mr. Harrelson's appearance and the safety of any other person and the community, the Court is directed to take into account:

(1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)  the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The standards of pre-trial detention for defendants charged in relation to the events of January 6, 2021 were very recently applied by the United States Court of Appeals for the District of Columbia Circuit in *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, (DC Cir. Mar. 26, 2021).  In that case, the Court of Appeals held that: "*If, in light of the lack of evidence that [defendants] Munchel or Eisenhart committed violence* on January 6, the District Court finds that they do not in fact pose a threat of committing violence in the future, the District Court should consider this finding in making its dangerousness determination. In our view, those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of

5

dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id.* 2021 WL 1149196, at *8. (emphasis added).

### III. ANALYSIS

The statutory factors under 18 U.S.C. § 3142(g), as well as the guidance provided by the *Munchel* opinion, weigh heavily in favor of conditions of release for Kenneth Harrelson.

    **A.    The Minimal Allegations Against Kenneth Harrelson and the Lack of Evidence Behind Them**

Mr. Harrelson was charged in a third superseding indictment with Conspiracy in violation of 18 U.S.C. § 371; Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. §§ 1512(c)(2), 2; Destruction of Government Property and Aiding and Abetting in violation of 18 U.S.C. §§ 1361, 2; and Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1). See Third Superseding Indictment (ECF 127) (filed 3/31/21). While the overt acts of numerous co-defendants are described in detail, there are scant allegations regarding Mr. Harrelson. Indeed, Mr. Harrelson is only identified in two overt acts:

    *50. On December 31, 2020, KELLY MEGGS (using his phone number as a participant name) and HARRELSON (under the name "gator 6") attended a GoToMeeting entitled "florida dc op planning chat." HARRELSON was an organizer of the meeting.*

    *59. On January 3, 2021, KELLY MEGGS (under the name "gator 1") and HARRELSON (under the name "gator 6") served as two of the three "organizers" of an 18-participant online meeting called "dc planning call."*

See ECF 127 at 12, 14 ¶¶ 50, 59.[1] The Affidavit in Support of the Criminal Complaint

---

[1] Harrelson is also named with his co-defendants in general background and introductory charging language paragraphs, as well in a number of allegations with most codefendants

contains two images of an individual believed to be Mr. Harrelson, standing in the crowd as the "military-style stake of individuals" is moving through the crowd toward the doors of the Capitol and four images from surveillance videos of Mr. Harrelson standing inside the Capitol. Another image captured Mr. Harrelson standing on Capitol grounds with a small group purportedly including Graydon Young and Kelly Meggs. See ECF 1-1, pp. 12-15. To date, the government has provided no additional evidence in discovery suggesting that Mr. Harrelson aided and abetted in the destruction of property, or presented an articulable threat to the community or to the peaceful transfer of power.

Thus, in requesting detention after *Munchel*, the government would presumably have this Court find that Mr. Harrelson's association with members of the Oath Keepers and his mere attendance at two on-line meetings, without more, is evidence that he was a leader or organizer of the offenses charged in the indictment. The government has not produced any actual evidence regarding the purposes for the GoToMeetings or what was discussed during any time Mr. Harrelson was a participant in on-line meetings. Other evidence suggests that the purpose of the two GoToMeetings meetings Mr. Harrelson attended was to organize a security detail for speakers a Trump rally set to take place in Washington, DC the morning of January 6, 2021, and that they had nothing to do with the events that transpired at the Capitol later that day.

In other filings by the government, the prosecution concedes that members of the Oath Keepers frequently provide personal security details ("PSDs") at Trump-related events. *See, e.g.,* <u>Affidavit in Support of Criminal Complaint</u>, 1:21-mj-00285-RRM (ECF 1-1) (3/8/21) (charging co-defendant Joshua James with offenses related to the instant case). According to the Affidavit, the government knew that Oath Keepers attended rallies in Washington, DC held on November

---

regarding entering the Capitol (*See* ECF 127 at ¶¶97-100), but the only language really specific to him is in paragraphs 50 and 59.

14, 2020 and December 12, 2020, at which some Oath Keepers operated as a personal security detail for one or more speakers at the events. *Id.* at 10 ¶¶ 20-27. Oath Keepers also attended rallies in DC held on December 12, 2020, to protest the results of the 2020. In addition, "Kelly Meggs asserted, in messages sent to others before January 5-6, 2021, that the Oath Keepers would be providing security for speakers and VIPs at the events in Washington, D.C., on these dates." *Id.* at 10 ¶¶ 30.

Without more, the government cannot establish that Mr. Harrelson participated in planning for the violence that erupted at the Capitol, or that he even intended to be physically present at the Capitol prior to January 6, 2021. Moreoover, there is nothing about the subject lines of those meetings (i.e., "dc planning"), to suggest what was actually discussed or that the participants were planning anything other than providing security at the January 6 rally.

While the Indictment contains numerous examples of incriminating messages posted on various social media and messaging applications, none of the messaging is attributed to Mr. Harrelson. Nor has the government produced evidence that Mr. Harrelson was using social media at all, either before or during the events of January 6, 2021, or that he used Zello, a cell-phone messaging app that mimics walkie-talkies, before or during the events of that day. There is also no evidence that Mr. Harrelson saw, or read, or participated in any postings on social media or Zello at any time during the events of that day.

The government has produced evidence that beginning on December 30, 2021, Oath Keepers were using Signal to plan travel to Washington, in early January. And while there is some evidence that Mr. Harrelson briefly used the Signal telephone and messaging application to communicate with Oath Keepers, he was not included in the string of chats beginning on December 30, 2020 until he was added by another participant on January 3, 2021. The next time

Mr. Harrelson appears in the chat is late in the evening of January 6, 2021, when he appears to make disparaging comments about other people on the chat. The next morning, he wishes someone "good travels" and then permanently signs off the chat.

In sum, there is nothing known to be incriminating about the GoToMeetings on-line meetings. Nor has the government produced any evidence that Kenneth Harrelson ever communicated with other Oath Keepers on social media or Zello, and no evidence he was following or even aware of the content of any other their messages. Finally, Mr. Harrelson's presence on Signal during this period is extremely limited, is in no way incriminating, and is an insufficient basis upon which to claim that Mr. Harrelson participated in planning the riot.

Lastly, the government's proffer of Mr. Harrelson's dangerousness should be weighed against the fact that the government either did not seek detention, or has not opposed the eventual release of codefendants who admitted that they pushed through the police barricades and defendants who have been charged with punching police officers, breaking windows, discharging tasers at officers and with fundraising for the riot. See *United States v. Munchel*, 2021 WL 1149196 at *8. Taken together, all of these factors weigh heavily in favor of Mr. Harrelson's release. *See* 18 U.S.C. § 3142(g)(1),(2)

> **B.     Kenneth Harrelson is a Retired Army Veteran**

Mr. Harrelson was honorably discharged from the United States Army with the rank of Sergeant on December 22, 2011, due to a number of medical issues including a back injury from a training accident. At the time of his promotion, he was recognized for his "patriotism, valor, fidelity and professional excellence." *See* Exhibit 1 (Promotion Letter) (dated 12/20/11). During his service, he was recognized as a "model Soldier who continuously displayed pride in his duty performance and a dedication to duty." *See* Exhibit 2 (Recommendation For Award) (dated

9

10/19/11). He worked as a welder, including on "mission critical" pieces of equipment. *Id.* He increased the productivity of his section by 30%, at one point logging in 800 man-hours. *Id.* "Despite the limitations of his medical profile, SPC Harrelson continued to make every effort possible to complete the unit's mission, setting the example for seniors, peers and subordinates alike." *Id.*  Back in civilian life, Mr. Harrelson continued to use his skills as a welder to find employment. Mr. Harrelson currently suffers from degenerative disc disease in his spine and a number of other conditions, including uncontrolled and extremely high blood pressure. *See infra.* He has a 100% disability rating from the military.

      **C.**      **Harrelson Suffers From Dangerously High, Uncontrolled Hypertension Which is Being Inadequately Treated While Incarcerated**

Kenneth Harrelson is currently incarcerated at the John E. Polk Correctional Facility in Seminole County, Florida. Prior to his arrest, has was under the care of a physician for hypertension (high blood pressure). Following his arrest and incarceration in this case, his blood pressure has been recorded as being dangerous high. Initially, he was not being given the medications his physician had prescribed. Later, some of his prescribed medications were introduced. By that time, however, his hypertension has gotten out of control. The facility is not treating this critical health issue.

Normal blood pressure is a reading of less 120/80. *See, e.g., Harvard Medical School, Reading the new blood pressure guidelines*, HARVARD HEALTH PUBLISHING (6/1/20).[2] Stage 1 hypertension is a systolic (top number) reading over 130 *or* a diastolic over 80. *Id.* Stage 2 hypertension is a systolic reading over 140 *or* a diastolic over 90. *Id.* It is considered a "hypertensive crisis" for an individual to have a systolic reading over 180 *or* a diastolic over 120. *Id.* With hypertensive crisis readings, immediate consultation with a doctor is advised. *Id.* The

---

[2] https://www.health.harvard.edu/heart-health/reading-the-new-blood-pressure-guidelines

dangers of such high blood pressure include heart attack, stroke, kidney failure and dementia. *See, e.g,* High blood pressure dangers: Hypertension's effects on your body, MAYO CLINIC (5/5/21).[3]

The facility has not been consistent in monitoring Mr. Harrelson's blood pressure. There have been days no readings are taken at all. Undersigned counsel has requested Mr. Harrelson's medical records from the jail. In the meantime, Mr. Harrelson has reported alarming blood pressure readings. For example, on March 20, 2021, Mr. Harrelson's blood pressure was 150/100 (stage 2). On March 21, 2021, it was 156/125 in the morning and 179/109 in the evening, both readings reflect hypertensive crises. That day, Mr. Harrelson was also feeling chest pains, his speech was slightly slurred, and he felt the veins in his neck were going to pop. After receiving some medication, his blood pressure dropped slightly into stage 2 hypertension, but it has consistently stayed in that dangerous range or above. Mr. Harrelson continues to feel neck and chest pain.

His extremely high blood pressure while incarcerated also poses a significantly increased risk of serious illness or death from COVID-19. *See, e.g., Harvard Medical School,* If you are at higher risk, HARVARD HEALTH PUBLISHING (5/5/20).[4] "According to the CDC, hospitalizations have been six times higher and deaths 12 times higher among those with reported underlying conditions compared with those who did not have underlying health conditions." *Id.* Moreover, the facility where Mr. Harrelson is being held continues to experience COVID outbreaks. *See, e.g., Grace Toohey,* Officials confirm 2nd COVID-19 outbreak at Seminole County jail,

---

[3]  https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/in-depth/high-blood-pressure/art-20045868

[4]  https://www.health.harvard.edu/diseases-and-conditions/if-you-are-at-higher-risk

ORLANDO SENTINEL (3/24/21).[5]  Last August, 43 inmates tested positive for COVID and one inmate died.  *Id.* The more recent outbreak involves 22 inmates and one staff member. *Id.* There are 780 people incarcerated at the jail, and the facility says it has given a vaccine to only 18 inmates (2% of the inmate population). *Id.* It also appears that the most recent testing was only in one housing area and further testing may reveal an even larger current outbreak. *Id.*

## IV.    CONCLUSION

This Court has fashioned conditions of release for most co-defendants in the instant matter. There is no evidence that Kenneth Harrelson damaged any property or committed (or intended to commit) any acts of violence. There is no evidence that Mr. Harrelson participated in organizing anything other than a trip to DC to provide security detail at a rally, the type of trip the government has conceded that the Oath Keepers have made on numerous prior occasions. Unlike some of his co-defendants, Mr. Harrelson never made any inflammatory remarks on social media or messaging platforms that suggests he may be dangerous or violent or that he agreed with, or was even following those accounts. At most, the government's evidence to date proves only that Mr. Harrelson was a member and communicated with other Oath Keepers, was present on the Capitol grounds entered the Capitol building after others had already cleared the way. *See Munchel*, 2021 WL 1149196, at *8.

Mr. Harrelson respectfully submits that pre-trial release is appropriate and warranted in this case.  The prior ruling in favor of detention was made without the benefit of the Circuit Court's guidance in *Munchel*, and without the information and discovery that has been made available to current counsel. A review of the recently available discovery reveals that there is

---

[5] https://www.orlandosentinel.com/news/breaking-news/os-ne-another-coronavirus-outbreak-seminole-jail-20210324-v3s67h75srgyvjlu67pwakazbu-story.html

scant evidence to back up the charges against Mr. Harrelson. He is a hard worker who devoted himself to the Army even as they recognized he has health challenges. Finally, he is suffering from untreated and dangerously high blood pressure while incarcerated and is at a significant risk for serious, permanent injury or death.

Respectfully submitted,

KENNETH HARRELSON
By Counsel

_____/s/_____
Nina Ginsberg, Esquire
DC Bar No. 251496
*DiMuroGinsberg, PC*
110 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email Address: nginsberg@dimuro.com

_____/s/_____
Jeffrey Zimmerman, Esquire
DC Bar No. 38858
*Jeffrey Zimmerman, PLLC*
108 N. Alfred Street
Alexandria, VA 22314
Telephone: (703) 548-8911
Facsimile: (703) 548-8935
Email Address: www.zimpacer.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April 2021, a true and accurate copy of the foregoing was electronically filed and served via the Court's CM/ECF system to all counsel of record.

                                                        /s/
                                      JEFFREY D. ZIMMERMAN