UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-cr-28 (APM) |
| | : |
| KENNETH HARRELSON | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT HARRELSON'S REPLY TO GOVERNMENT'S OPPOSITION TO HIS
MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE**

COMES NOW, the Defendant, Kenneth Harrelson, by and through counsel, Nina J. Ginsberg and Jeffrey Zimmerman, in reply to the government's opposition to his motion for reconsideration of conditions of release (Dkt. 152). The government's opposition is based on inferences and conclusions that are not supported by the evidence.

**Introduction**

The government has failed to establish that the rebuttable presumption favoring detention applies to Mr. Harrelson having admitted there is no evidence that he destroyed government property. The videos and photographs referenced by the government, show, at most, that Mr. Harrelson entered the Capitol building in the middle of a teeming crowd, and that he wandered somewhat aimlessly around the rotunda. As was the case at Mr. Harrelson's initial detention hearing, the government has not presented clear and convincing evidence that the defendant presents an identified and articulable threat to an individual or the community, or that there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e).

Mr. Harrelson was not one of the leaders of the Oath Keepers and did not participate in organizing or plotting with co-conspirators to stop the certification of the Electoral College vote.

1

He was not prepared to use, and did not use violence, nor did he plan alone or with others to "storm" the Capitol. In fact, the government has admitted that he did not damage any property or commit any act of violence. Mr. Harrelson did not send incriminating chats or messaging, or delete chats or other messaging with the intention of deleting incriminating evidence, and did not intentionally perjure himself at his initial detention hearing.[1] The government's claims to the contrary are unsupported or flatly contradicted by the evidence.

**There is No Evidence That Mr. Harrelson Destroyed Property**

In arguing that a rebuttable presumption favoring detention applies to Mr. Harrelson, the government admits that it is not "not relying on the strength of the evidence as to the Section 1361 violation [destruction of government property] to support Defendant Harrelson's detention" and suggests that it is instead enough that the grand jury found probable cause. *See* ECF 152 at 5-6. However, the government's reliance on *United States v. Singleton,* 182 F.3d at 6, 7, 12 (D.C. Cir. 1999) to suggest that it has satisfied its various threshold burdens is misplaced. *Id.* at 6. *Singleton* dealt only with triggering the detention hearing itself, pursuant to 18 USC §3142(f) — it was not a case regarding the rebuttable presumption of detention under 18 USC §3142(e). *See Singleton,* 182 F.3d at 8-9, 16-17. Rather, once a hearing is triggered, the rebuttable presumption applies only "if the *judicial officer* finds that there is probable cause to believe that the person committed" one of the enumerated offenses. *See* 18 USC §3142(e)(3). The magistrate

---

[1] Mr. Harrelson was asked at his initial detention hearing whether he took photos and videos on his phone when he was inside the Capitol. See Gov. Opp., Dkt. 152 at 3. He responded that – "it didn't—nothing was recorded … it didn't record for some reason. There was issues with the phone." *Id*. The government recovered 10 videos from Mr. Harrelson's cell phone. The photos or video he attempted to take while standing next to Mr. Young inside the Rotunda did not record and is not among the videos the government recovered from his phone or produced. Mr. Harrelson did not perjure himself when he testified that there were issues with the phone and nothing was recorded. It is also likely that he did not recall the last portion of a video that he started recording while he was outside the building on the Capitol steps or that he continued recording once he got inside.

judge erroneously found that the government had met its burden. The government has fared no better before this Court.

The government is relying on felony destruction of property – that is, destruction of property valued at more than $1000 — in seeking to invoke the rebuttable presumption of detention.  ECF 152 at 5.  There is *no* evidence that Mr. Harrelson was involved in the destruction of any property, let alone property valued at over $1000, or that he aided and abetted others in such destruction. The videos and photographs referenced by the government show, at most, Mr. Harrelson entering the Capitol in the middle and behind a huge crowd of other people present that day. He does not appear to touch – much less destroy – any property while in the building. There has been nothing presented on which this Court could find probable cause that he committed that offense.  Moreover, even assuming the presumption did apply, the Court must consider the "weight of the evidence against the person" in determining whether conditions of release will assure his appearance or the safety of the community.[2] *See* 18 USC §3142(g)(2). The weight of the evidence triggering the presumption of detention weighs heavily in favor of Mr. Harrelson.

### There is No Evidence That Mr. Harrelson Planned to Forcibly Enter the Capitol or Disrupt the Certification of the Election

The government has presented no evidence that Mr. Harrelson was a leader of a plan to forcibly enter the Capitol, or to disrupt the certification of the Electoral College vote.  Mr. Harrelson was not "among the 'stack'" of more than a dozen individuals dressed in camouflaged para-military gear that moved up the stairs toward the Capitol building.

---

[2]  The government is seeking detention based only on alleged future dangerousness and does not contend that Mr. Harrelson is a flight risk.



Rather, he was standing off to the side of the "stack," among a swarm of people cheering them on as the stack followed the crowd into the Capitol. The videos and photographs also depict Mr. Harrelson being pushed toward the entrance along with a mass of other individuals, most of whom have not, and likely will never be charged.



4

Later, Mr. Harrelson was seen in photos and video footage walking with groups of people inside the Capitol building and in a photo standing peacefully inside the rotunda with his back to Graydon Young, attempting to photograph or video his surroundings.





Other than his presence in the crowd of people entering the Capitol, the government has offered no evidence that Mr. Harrelson engaged in unlawful activity inside the building.



Additional photos of Mr. Harrelson's presence in the teeming crowd and inside the Capitol appear at pages 14 to 19 of the Government's Opposition. Nothing depicted in any of the images proffered by government, including photographs of Mr. Harrelson interacting with other Oath Keepers, as well as Mr. Harrelson's own recordings, is proof of a plan to storm the Capitol or disrupt Congress, or proof that Mr. Harrelson was aware of the Signal Chats quoted by the government that were being exchanged before and after the Capitol building was breached. See Gov. Opp at 12. There is simply no evidence that he destroyed or damaged any property or that he engaged in any acts of violence. To the contrary, the photos and videos merely show Mr. Harrelson entering the Capitol in the middle of the swarming crowd and wandering around somewhat aimlessly inside the building. Beyond that, what the government has offered is unsupported conjecture.

Additionally, evidence from a video recovered from Mr. Harrelson's cell phone makes it perfectly clear that Mr. Harrelson did not plan to storm the Capitol or to disrupt the certification of the election. The video was taken from a location on the Capitol terrace at least 100 yards from the Capitol steps leading up to the building. Early in the video, a person within earshot of Mr. Harrelson is recording exclaiming — "they're storming the f-----g Capitol Building." After the video continues to pan the crowd, a person standing close to Mr. Harrelson says in a quiet

6

voice, "I think we should go, [huh] I think we should go."  It is obvious from the video that no one standing with Mr. Harrelson (or Mr. Harrelson himself) anticipated the events that quickly unfolded.  The video is also convincing evidence that Mr. Harrelson made his decision to join the crowd only moments before the march toward the Capitol began.  Video produced in USAfx, *US v. Caldwell et al*. Discovery/Harrelson Materials/Video 8 MOV

Furthermore, none of the statements and movements of other Oath Keepers as they moved through the Capitol can be attributed to Mr. Harrelson or considered as evidence of Mr. Harrelson's intent.  See Gov. Opp at 18.  Likewise, references to Jessica Watkins' description of an "insurgent effort to breach the Capitol building" and to Signal Chats attributed to other co-conspirators are not evidence of Mr. Harrelson own actions or his status as a leader, or that he even viewed postings extoling the forced entry into the Capitol building. Indeed, Mr. Harrelson's very occasional appearance as "Gator 6" in the National Signal Chat is neither proof that he viewed much of the inflammatory rhetoric, or evidence that he shared the views being expressed.

Likewise, his participation in a legal firearms training program in the fall of 2020—well before the election results were known and any of the rallies were planned—has no bearing on whether he was training or preparing to mount an insurrection on the Capitol.  Mr. Harrelson and his wife both hold concealed carry permits in the State of Florida.  (Copies attached as Exhibit 1).  Mr. Harrelson was also part of a rapid deployment unit in the Army where he trained as a squad automatic weapon gunner on military convoys.[3]  Before retiring from the military in 2011,

---

[3] A full description of Mr. Harrelson's military service and disability assessment is filed separately under seal as Exhibit 2.  His wife has scheduled appointments with his treating physician and doctor for April 15, 2021 should he be released.  As a veteran, his is eligible to be seen by at the Viera VA Clinic at 20900 Veteran's Way, Viera, Florida, the day he is released without an appointment. Future appointments at the Viera mental health clinic will be scheduled at his first visit.

Mr. Harrelson was promoted to Sergeant, MOS 91E20 by Order 354-126, citing his "patriotism, valor, fidelity, and professional excellence. (Copy attached as Exhibit 3). A description of the firearms training classes that Mr. Harrelson and his wife attended, and that are offered to the general public, can be accessed at https://arestrainingfacility.com/training-and-classes. Notably, none of the firearms that were located during the search of Mr. Harrelson home was seized by the FBI or removed from his home, or listed in the FBI 302 of the search as "items of potential evidentiary value." Likewise, the lawful possession of firearms by Mr. Harrelson and members of his family is not evidence that Mr. Harrelson possess a threat to an individual or the community. Similarly, the family's possession of survival guides, including one on "eluding pursuers and evading capture" are red herrings, intended to inflame the Court. Mr. Harrelson made no effort to evade, capture or to engage in acts of unconventional warfare as the government suggests. See Gov. Opp. at 20-21. Rather, he is a productive member of his community.

Mr. Harrelson's employer at JL Garret & Associates is holding his position as lead TIG welder open for him to return to work. According to Mr. Garrett, while employed at JL Garret & Associates, Mr. Harrelson has been a part of projects that support missions for the United Launch Alliance, NASA, Blue Origin, as well as many other government agencies, and is a highly valued employee. See Letter from Justin Garret, attached as Exhibit 4.

**There Is No Evidence That The GoToMeeting Meetings And Signal Chats Involved The Planning Of Any Unlawful Activity**

The government has yet to produce single piece of evidence regarding the purposes for the GoToMeetings, or what was discussed while Mr. Harrelson was a participant in any of the on-line meetings. However, other evidence suggests that the purpose of the GoToMeetings meetings Mr. Harrelson attended was to organize security details for speakers at rallies set to

take place in Washington, DC on January 5, 2021 and the morning of January 6, 2021. The government has presented no evidence that they had anything to do with the events that transpired at the Capitol later that day.

In other filings by the government, the prosecution has conceded that members of the Oath Keepers frequently provide personal security details ("PSDs") at Trump rallies. See e.g., Affidavit in Support of Criminal Complaint, *United States v. Joshua James*, Criminal No. 1:21-mj-00284-RRM, Dkt. 1-1 at ¶ 28 ("Your affiant is aware that certain Oath Keepers attended rallies in Washington, DC., held on December 12, 2020, to protest the results of the 2020 election –at which some Oath Keepers, to include Person Five, operated as a personal security detail for speakers at the events.") and ¶ 31 ("Finally, records indicate that, on or around January 5, 2021 . . . James, Person Five, and other individuals wearing apparel with the Oath Keepers name and/or insignia provided security to a speaker at the "Stop the Steal" events planned for that day."). In other words, the government knew that Oath Keepers attended rallies in Washington, DC held on November 14, 2020 and December 12, 2020, at which some Oath Keepers operated as a personal security detail for one or more speakers at the events, *Id.* at 10 ¶¶ 20-27, and that Oath Keepers also attended rallies in DC held on December 12, 2020, to protest the results of the 2020. In addition, "Kelly Meggs asserted, in messages sent to others before January 5-6, 2021, that the Oath Keepers would be providing security for speakers and VIPs at the events in Washington, D.C., on these dates." *Id.* at 10 ¶¶ 30.

Similarly, during testimony at co-defendant, Joshua James' Preliminary and Detention Hearing on March 11, 2021 FBI Agent Paul Jones testified that:

 Q. "Okay. And in paragraph 27, you read that certain Oath Keepers attended rallies and that they were acting a person security details for speakers, correct?
 A. "Correct.
 Q. "It is not your allegation that acting as a person security detail is illegal, is it?

A.   "No, not at all."

Transcript of Proceedings on March 11, 2021, pp. 39-40, *United States v. Joshua James*, 1:21-cr-00028 (N.D.Al.), Dkt. 142-1.

**The Government Concedes That There Is No Evidence That The Signal Chats Involved The Planning Of Any Unlawful Activity**

In an email to all defense counsel last Thursday (April 8, 2021), the government conceded that the Signal chats prior to January 6, 2021, do not contain any references to a plan to forcibly enter the Capitol (emphasis added).

> Counsel,
>
> Attached please find a draft transcription of an excerpt of messages obtained from a chat in the Signal encrypted messaging application called "OK FL DC OP Jan 6." This is a draft, and some of the times and content are subject to further editing. The names of several of the participants have been redacted. We are disclosing these messages to you because you will see that, prior to January 6, 2021, this chat does not contain any explicit references to a plan to forcibly enter the U.S. Capitol on January 6, 2021, and also because the government may reference some of the messages in response to Defendant Harrelson's bond review motion. This document should be treated as SENSITIVE under the protective order.
>
> Please let us know if you have any questions.
>
> Jeff Nestler
>
> **Jeffrey S. Nestler**
> Assistant United States Attorney
> 555 Fourth Street NW, Wasington, DC 20530
> Email: Jeffrey.Nestler@usdoj.gov
> Office: 202-252-7277
> Cell: 202-815-8672

Likewise, the two Signal Chats referenced by the government do not show that the participants were planning or anticipating to use force on January 6. In the Florida Signal Chat cited by the government, Kelly Meggs refers to a "27 man team" and to 4-5 medics in the group. Mr. Harrelson is also identified as running the ground team. The chats are consistent with plans to provide protection details at the January 5 and 6 rallies, and in no way suggest the participants were anticipating using force. Indeed, in the DC OP January 6 Signal Chat, PERSON ONE (an alleged leader of the Oath Keepers) is quoted saying that "Gator [1] and his FL team are already set to provide a PSD [Personal Security Detail] for Roger Stone.

The transcript of the DC OP January 6 Signal Chat begins on December 30, 2020. The first time Mr. Harrelson is even mentioned is on January 3, 2021:

| SYSTEM | 1/3/2021 | 6:02 PM | OK Gator 1 added Kenneth Harrelson |
|---|---|---|---|
| Ok Gator 1 | 1/3/2021 | 6:22 PM | Added Gator 6 Ground Team lead in Florida. He needs to be in the call as well so I will repost. |
| Ok Gator 1 | 1/3/2021 | 6:22 PM | OK State/team leader meeting<br>Sun, Jan 3, 2021 8:30 PM - 9:30 PM (EST)<br><br>Please joing my meeting from your computer, tablet or smartphone.<br><br>https://global.gotomeeting.com/join/478058517<br><br>You can also dial in using your phone. (For supported devices, tap a one-touch number below to join instantly.)<br><br>United States: +1 (571) 317-3122<br><br>-One-touch: tel: =15713173122_478058517#<br><br>Access Code: 478-058-517<br><br>New to GoToMeeting? Get the app now and be ready when your first meeting starts:<br>https://global.gotomeeting.com/install/478058517 |

And even though Kelly Meggs added Mr. Harrelson to the chat on 1/3/21, Mr. Harrelson does not appear in the chat transcript again until 1/6/21 at 11:20 PM:

| Kenneth Harrelson | 1/6/2021 | 11:20 PM | This message was deleted. |
|---|---|---|---|
| Kenneth Harrelson*(presumably-no attribution on messages but no one else posted between Harrelson's deleted chat and the next attributed post) | 1/6/2021 | 11:20 PM | This message was deleted. |
| Kenneth Harrelson*(presumably-no attribution on messages but no one else posted between Harrelson's deleted chat and the next attributed post) | 1/6/2021 | 11:20 PM | Didn't realize I was in a unsecured chat with a bunch of shit bags |
| Kenneth Harrelson*(presumably-no attribution on messages but no one else posted between Harrelson's deleted chat and the next attributed post) | 1/6/2021 | 11:23 PM | And blue falcons |

**There Is No Evidence That Mr. Harrelson Brought Weapons To DC Or That He Stored Weapons At The Comfort Inn**

On the morning of January 5, Mr. Harrelson used the Florida Signal Chat to ask: "We get that QRF hotel address yet." Kelly Meggs responded "Dm." Mr. Harrelson's question shows that he was aware of discussions about a QRF, but is not evidence that he learned of its location, or that "he was dropping off his weapons at the Comfort Inn Ballston during the hour after he arrived in the D.C. metro area. See Gov't Opp., Dkt, 152 at 10. Videos taken of Mr. Harrelson with his luggage at the Comfort Inn Ballston establish that he was a guest at that hotel, and did not occupy one of the rooms Kelly Meggs paid for at the Hilton Garden Inn in Washington, D.C.

12

It is also evidence that he had a good reason to be present at the hotel after arriving in the D.C. area three hours after sending his message. Video produced in USAfx, *US v. Caldwell et al.* Discovery/Harrelson Materials/Comfort1_01_01_2021017_0915355.mp4

Moreover, there is no basis upon which this Court can conclude that Mr. Harrelson's reference to needing to locate his "shit" on the morning of January 7 was a reference to anything other than picking up his luggage, or that he had dropped his weapons off with the QRF on January 5 and retrieved them on January 7. See Gov't Opp. Dkt 152 at 11.

Finally, it is worth noting that there is no evidence that an actual "Quick Reaction Force" even existed, or that Mr. Harrelson (or any of his co-defendants) ever possessed a firearm while in Washington, D,C., and no evidence that this supposed "QRF" was ever called to provide backup or bring guns into the District.

**The Government's Allegations of "Future Dangerousness" Are Unavailing**

The government makes much of the fact that Mr. Harrelson, a retired Army Sergeant, keeps lawful firearms in his home. Yet, again, there is no evidence – or even an allegation – that he ever possessed a firearm or any other weapon while in Washington, DC during January 2021. The government also alleges that Mr. Harrelson deleted messages from his cellphone. They do not know what the allegedly deleted messages contained save for the suggestion that he sent and deleted copies of a video that they have. Again, this video shows Mr. Harrelson entering the Capitol in the middle of a teeming crowd, not damaging any property, or engaging in any act of violence.

**Mr. Harrelson's Medical Condition Is A Compelling Reason For Release Under 18 U.S. C. § 3142(I)**

Mr. Harrelson is receiving inadequate medical treatment for his severe hypertension. That alone is a basis for granting pretrial release under 18 U.S.C. § 3142(i) which provides that a

13

"judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense *or for another compelling reason*." (emphasis added).  As the Court is aware, Mr. Harrelson's health has deteriorated while he has been in the custody of the John E. Polk Correctional Facility, putting him at risk of stroke or cardiac arrest.  For a person with Mr. Harrelson's medical conditions and risk factors, the lack of treatment coupled with the health risks associated with the pandemic are sufficient independent grounds under Section 3142(i) to grant his release.

**Conclusion**

This Court has fashioned conditions of release for nearly every co-defendant in this case. There is no evidence that Kenneth Harrelson damaged any property or committed a single act of violence. There is no evidence that Mr. Harrelson was a leader of the Oath Keepers, or that he did anything other than help organize a trip to Washington, D.C. to provide security details for speakers at the "Stop the Steal" events—the types of trips the government concedes that Oath Keepers had made in the recent past.  Mr. Harrelson never made any inflammatory remarks on social media or messaging platforms that suggests he may be dangerous or violent or that he agreed with, or was even following, those accounts.

The government's evidence to date establishes – at most – that Mr. Harrelson was a member of the Oath Keepers, that he traveled to Washington, D.C. and communicated with other Oath Keepers, that he was present on the Capitol grounds and that he entered the Capitol building after others had already cleared the way.  See *Munchel*, No. 21-3010, Slip Op. at 18-19. Release under conditions is therefore warranted.

Respectfully submitted,

KENNETH HARRELSON
By Counsel

_____/s/_____
Nina J. Ginsberg, Esquire
DC Bar No. 251496
*DiMuroGinsberg, PC*
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email Address: nginsberg@dimuro.com

_____/s/_____
Jeffrey Zimmerman, Esquire
DC Bar No. 456162
*Jeffrey Zimmerman, PLLC*
108 N. Alfred Street
Alexandria, VA 22314
Telephone: (703) 548-8911
Facsimile: (703) 548-8935
Email Address: www.zimpacer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2021, a true and accurate copy of the foregoing was electronically filed and served via the Court's CM/ECF system to all counsel of record.

_____/s/_____
NINA J. GINSBERG