**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | ) | | |
| | ) | | |
| **v.** | ) | **No.** | **1:21-cr-28-10 (APM)** |
| | ) | | |
| **KENNETH HARRELSON,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S THIRD
MOTION FOR RELEASE**

Defendant Harrelson's *third* motion for release suffers from the same flaws as his *second* motion for release, and it should meet the same fate: summary denial. As the Court wrote when it denied his second motion for release, *see* Sept. 17, 2021, Order (ECF 430), the defendant simply rehashes facts that were addressed at the initial detention hearing but fails to articulate any new material facts or law that would warrant a reconsideration of the Court's initial detention decision.

Defendant Harrelson's lengthy motion is rife with outlandish arguments but fails to even mention the relevant statutory provision at issue. Section 3142(f)(2)(B) permits a court to reopen a bond hearing and reconsider a defendant's detention if the court "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Apr. 23, 2021 Order (ECF 177) (quoting 18 U.S.C. § 3142(f)(2)(B)) (alterations in original). It is Defendant Harrelson's burden to come forward with "new and material information," which "must consist of truly changed circumstances, something unexpected, or a significant event." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (internal citation and quotation omitted). He has not come close to meeting that burden here.

The present motion is Defendant Harrelson's sixth attempt,[1] with his fourth lawyer, to secure his release:

1. On March 15, 2021, Middle District of Florida Magistrate Judge Embry Kidd conducted a detention hearing.   At the time, Defendant Harrelson was represented by attorney Kenneth Barlow.  Judge Kidd ordered Defendant Harrelson detained pending trial.  *See* Case No. 6:21-mj-01221-EJK (M.D. Fla., ECF No. 7, Mar. 15, 2021).

2. Defendant Harrelson was then transported to Washington, D.C., and he retained two new attorneys: Nina Ginsberg and Jeffrey Zimmerman.  They promptly moved this Court to reconsider Judge Kidd's detention order.  ECF 143.  On April 14, 2021, this Court conducted a detention hearing and ordered Defendant Harrelson detained pending trial.  ECF 167 (Hearing Transcript).

3. Defendant Harrelson then retained a new attorney: John Pierce.  On August 11, 2021, Defendant Harrelson moved to adopt a co-defendant's motion for release, ECF 336, which the Court summarily denied via minute order the following day.

4. On August 17, 2021, Defendant Harrelson moved to revoke Judge Kidd's detention order.  ECF 341.  On September 17, 2021, the Court issued an order denying this motion to revoke the detention order.  ECF 430.  The Court held that Defendant Harrelson had offered "no compelling reason for the court to reconsider its [detention] decision."  *Id.* at 2.  The Court also held that Defendant Harrelson failed to "address any of the evidence the court considered at the prior detention hearing.  Instead, he merely makes assertions about the lack of evidence that he engaged in violent acts or directly destroyed property."  *Id.*

---

[1] On November 16, 2021, he filed yet another motion for release—his seventh—on alleged "humanitarian" grounds.  ECF 489.  The government will address that motion separately.

5. On August 20, 2021, Defendant Harrelson filed a sealed supplement, with additional arguments, purporting to support his August 17 motion.  ECF 357.  On September 17, 2021, the Court issued a minute order holding that the legal argument in the sealed supplemental pleading did not "not alter the court's determination to detain Defendant."  Sept. 17, 2021 Min. Order.  However, because the sealed supplemental pleading also alleged facts about the defendant's health status, the Court provided the government an opportunity to respond.  *Id.*  On October 14, 2021, during a status hearing, the Court concluded that Defendant Harrelson's alleged medical condition did not warrant a change in his detention status.  ECF 463 (Hearing Transcript) at 54-57.

Defendant Harrelson has now retained another new attorney, but he puts forth no new facts or law in his present bond motion.  ECF 483.

Defendant Harrelson's current motion is similar to the prior one he filed, and it should meet the same fate.  "[H]e merely makes assertions about the lack of evidence that he engaged in violent acts or directly destroyed property.  But, of course, this court was aware of the absence of such proof, and yet detained Defendant anyways because the totality of the evidence established his dangerousness."  ECF 430 (Sept. 17, 2021, Order), at 2 (internal citation omitted).

## I.      Factually Inaccurate Statements

Defendant Harrelson makes many factually inaccurate statements, none of which have any impact on this Court's prior decision that he would pose a danger to the community if he were released.

*First,* he alleges that Congress recessed on that afternoon of January 6 because of reports of a pipe bomb, not because Defendant Harrelson and hundreds of others were in the process of storming the Capitol.  ECF 483 at 19-20.  As support, he cites his own reply brief in support of the motion to dismiss, ECF 465 at 14-15.  But even the sources he cites in the reply brief state that the

pipe bombs caused the evacuation of certain *office buildings* on the Capitol complex, not the Capitol building itself.  There is no support for Defendant Harrelson's allegation that his actions on January 6 did not contribute to the obstruction of Congress's Joint Session.  Regardless, that is a fact for a jury to decide at trial; it certainly does not support his release.

*Second,* Defendant Harrelson makes much of the time the House recessed, alleging that to be 2:18pm.  ECF 483 at 9.  As a factual matter, while the House initially recessed at 2:18pm, it came back into session at 2:26pm, only to recess again at 2:29pm.  *See* Congressional Record, vol. 164, no. 4 (Jan. 6, 2021), at H85.  At the time, the two Houses had adjourned to their respective chambers to debate an objection, and the Senate itself recessed at 2:13pm.  *See id.* at S18. Moreover, Defendant Harrelson was unlawfully on the Capitol grounds as of 2:02pm, *see* ECF 328 (Fifth Superseding Indictment) at ¶ 117, and by 2:29pm—the time the House recessed for the second time—he was on the stairs outside the Rotunda doors.  Regardless, the time a particular House recessed is irrelevant.  Some members of Congress remained in the building after Defendant Harrelson had breached it, and they could not resume their constitutional and statutory duties until Defendant Harrelson and the other rioters were expelled.

*Third,* Defendant Harrelson claims, citing a government disclosure letter, that "there were no incriminating signal chats prior to January 6th."  ECF 483 at 32.  That is false.  The government's disclosure language, which is visible in the defendant's motion, states that in this particular draft of this particular Signal thread ("OK FL DC OP Jan 6"), there are no "explicit references to a plan to forcibly enter the U.S. Capitol."  That is a far cry from a bald statement that there are no incriminating Signal messages in this case.  There are reasons why a particular Signal thread may not contain certain statements: depending on the settings, a user may be able to delete

his own message[2] and an administrator may be able to delete others' messages.[3]  Signal messages

are stored locally on users' devices, so there is no mechanism to obtain the messages from Signal

itself.

Moreover, there are indeed incriminating Signal messages in this case.  To take one

example, on December 25, 2020, co-defendant (and Defendant Harrelson's team lead) Kelly

Meggs wrote in a Signal thread on which Defendant Harrelson was also a member (titled "OKFL

Hangout"):

> We need to make those senators very uncomfortable with all of us being a few
> hundred feet away.  Our peaceful protests need to have a little more teeth.  They
> aren't listening.  Now we aren't talking about crossing the line.  But we need to be
> standing on the line!!!  It's all bad from here guys.  We need Trump because it will
> make our jobs easier.  There is gonna be blood in the streets no matter what.

Person One then wrote:

> I think Congress will screw [Trump] over.  The only change we/he has is if we scare
> the shit out of them and convince them it will be torches and pitchforks time is [*sic*]
> they don't do the right thing.  But I don't think they will listen.

To take another example, an additional Signal thread shows that the leaders of the Oath

Keepers called members and affiliates to the Capitol while referencing the ongoing attack.  This

thread includes messages directing Kelly Meggs to come to a particular part of the Capitol grounds

about half an hour before Kelly Meggs and Defendant Harrelson (and others) entered the Capitol.

*See* Superseding Indictment (ECF 328) at ¶¶ 124, 131-32 (citing Signal thread "DC OP: Jan 6 21").

---

[2] Indeed, here, Defendant Harrelson posted in the Signal thread "OK FL DC OP Jan 6" but then deleted his own messages.

[3] For example, in a version of the Signal thread "OK FL Vetted Chat" that the government obtained from a user's phone, there is no content at all between January 4 and 8, 2021.  But the government knows that users were actively posting in that thread on January 6, because it recovered a screenshot from Defendant Harrelson's phone showing that he received notifications of posts in that particular thread on January 6.

*Fourth*, Defendant Harrelson makes the ludicrous statement that he was "peacefully" in the Rotunda, attempting to photograph or video his surroundings. *Id.* at 24-25. And he alleges that he "peacefully enter[ed] the Capitol" and that the mob of other people with him "look[ed] like Disney World crowds." *Id.* at 35. The video taken by Defendant Harrelson himself, *see* ECF 152 (Gov't Opp. to Def.'s Mot. for Recons. of Conditions of Release, at Ex. 2 IMG_1399), debunks this myth. There is nothing peaceful about Defendant Harrelson's actions. His co-conspirators (and possibly Harrelson himself) are chanting "Treason!" as they physically force their way into the Capitol and march through the Rotunda.

*Fifth*, Defendant Harrelson declares several times that he "defended" or "aid[ed]" Officer Dunn. ECF 483 at 31, 39, 41. But, as the government pointed out in its opposition to co-defendant Kelly Meggs's second bond review motion, ECF 388, neither Officer Dunn nor the other officers who were nearby stated or suggested that the indicted defendants assisted the officers. Not only is the statement untrue, but it is irrelevant. Anything Defendant Harrelson personally did would have been known to him at the time of his detention hearing, and thus would not be "new" information that would warrant reopening the hearing.

## II.     Legally Irrelevant Arguments

Defendant Harrelson also makes three legally irrelevant arguments.

*First,* he takes issue with this Court's finding that he lied while testifying at his detention hearing in Florida. ECF 483 at 38. He attempts to minimize and justify his actions by claiming he may have been confused by lack of medication and sleep. *Id.* But even if these arguments were credited, these were facts obviously known to the defense at the time of his prior detention hearing. There is nothing new here.

*Second,* he complains that there is no evidence that he destroyed property. *Id.* at 39. But as the government explained at the detention hearing, the government does not allege that he

6

*personally* destroyed property; the government alleges that he is legally responsible for the destruction committed by others under an aiding and abetting or *Pinkerton* theory of liability.  Apr. 14, 2021 Tr. at 4-11.

*Third,* he makes an unsupported allegation of "Government undercover agents and other 'insincere' march attendees."  ECF 483 at 1.  And he spills much ink on the Twitter posts of a Florida elected official.  *Id.* at 18-19, 37.  But allegations about prejudicial statements made by "Florida State Officials" and in "overheated press coverage," *id.* at 37, even if true or supported by facts, have no impact on this Court's decision that Defendant Harrelson would pose a danger to the community if he were released.

Defendant Harrelson's motion for release should be denied.

Respectfully submitted,

Matthew M. Graves
United States Attorney
DC Bar No. 481052

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

*/s/ Alexandra Hughes*
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division

7

United States Department of Justice
950 Pennsylvania Avenue
NW Washington, D.C. 20004